# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| CHRISTOPHER R. BOLLING, <br>    Plaintiff | ) <br> ) <br> ) | |
| v. | ) <br> ) | Civil Action No. 2:17cv00004 |
| NANCY A. BERRYHILL, <br>   Acting Commissioner of <br>   Social Security, <br>    Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) | **MEMORANDUM OPINION** <br><br> BY: PAMELA MEADE SARGENT <br> United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Christopher R. Bolling, ("Bolling"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2011 & West 2012). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may

be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Bolling protectively filed applications for DIB and SSI on April 17, 2013, alleging disability as of October 15, 2012, based on back and neck problems. (Record, ("R."), at 199-200, 203-06, 221, 225.) The claims were denied initially and upon reconsideration. (R. at 108-10, 115-17, 121, 124-26, 128-33, 135-37.) Bolling then requested a hearing before an administrative law judge, ("ALJ"). (R. at 138-39.) A video hearing was held on November 2, 2015, at which Bolling was represented by counsel. (R. at 33-54.)

By decision dated November 20, 2015, the ALJ denied Bolling's claims. (R. at 19-27.) The ALJ found that Bolling met the nondisability insured status requirements of the Act for DIB purposes through September 30, 2016. (R. at 21.) The ALJ also found that Bolling had not engaged in substantial gainful activity since October 15, 2012, the alleged onset date. (R. at 21.) The ALJ found that the medical evidence established that Bolling suffered from severe impairments, namely degenerative disc disease of the cervical and lumbar spine and an adjustment disorder due to pain, but she found that Bolling did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21-22.) The ALJ found that Bolling had the residual functional capacity to perform simple, routine, light work,[1] except that he would be limited to never climbing ladders, ropes or

---

[1] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2017).

scaffolds; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, crawling and bilateral overhead reaching; and frequent bilateral reaching in other directions, handling and fingering. (R. at 23.) The ALJ found that Bolling was unable to perform his past relevant work. (R. at 25.) Based on Bolling's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ also found that jobs existed in significant numbers in the national economy that Bolling could perform, including jobs as a café attendant, a cashier and a stuffer. (R. at 26-27.) Thus, the ALJ found that Bolling was not under a disability as defined under the Act, and was not eligible for DIB or SSI benefits. (R. at 27.) *See* 20 C.F.R. §§ 404.1520(g) 416.920(g) (2017).

After the ALJ issued her decision, Bolling pursued his administrative appeals, (R. at 10-14), but the Appeals Council denied his request for review. (R. at 1-4.) Bolling then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2017). The case is before this court on Bolling's motion for summary judgment filed October 16, 2017, and the Commissioner's motion for summary judgment filed November 15, 2017.

## II. Facts

Bolling was born in 1970, (R. at 199, 203), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). He has two years of college education and past relevant work experience as a computer service technician, a customer service associate and a truck driver. (R. at 49, 226.) Bolling stated that his medications made him drowsy and impeded his coordination. (R. at 43.) He stated that he lost his driver's license for failure to pay child support. (R. at

45-46.)

Mark Hileman, a vocational expert, also was present and testified at Bolling's hearing. (R. at 49-53.) Hileman was asked to consider a hypothetical individual of Bolling's age, education and work history, who could perform light work, except that he would be limited to occasional bilateral overhead reaching, climbing stairs and ramps, balancing, stooping, kneeling, crouching and crawling; and he would be limited to never climbing ladders, ropes or scaffolds. (R. at 50.) He stated that such an individual could not perform Bolling's past work, but that other jobs existed in significant numbers that such an individual could perform, including jobs as a cafeteria attendant, a cashier II and a small parts assembler. (R. at 50-51.) Hileman was asked to consider the same individual, but who would be limited to frequent reaching, handling and fingering. (R. at 51.) He stated that these limitations would eliminate the small parts assembler jobs. (R. at 51.) Hileman was then asked to assume the first hypothetical individual, but who would be limited to standing only two hours a day. (R. at 51.) He stated that there would be sedentary[2] jobs available that such an individual could perform, including jobs as a stuffer, a sorter and an assembler. (R. at 51-52.) He stated that the jobs identified would not be eliminated if the individual also was limited to frequent reaching, handling and fingering. (R. at 52.) Hileman was asked to consider an individual who would be limited to simple, routine unskilled work. (R. at 52.) He stated that the individual could perform all the jobs he had listed except the sorter job if the individual was limited to simple, routine, unskilled work. (R. at 52-53.)

---

[2] Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties. Jobs are sedentary if walking or standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2017).

In rendering her decision, the ALJ reviewed medical records from Dr. Robert McGuffin, M.D., a state agency physician; Dr. Carolina Bacani-Longa, M.D., a state agency physician; Lonesome Pine Hospital, ("Lonesome Pine"); Dr. Michael Wheatley, M.D.; Norton Community Hospital; Dr. D. Kevin Blackwell, D.O.; University of Virginia Health System, ("UVA"); and Paige Cordial, PsyD., a licensed clinical psychologist.

On November 1, 2002, Bolling presented to the emergency room at Lonesome Pine for complaints of left hip pain. (R. at 315-23.) X-rays of Bolling's left hip were normal. (R. at 320.) X-rays of Bolling's lumbar spine showed evidence of degenerative disc disease at the L5-S1 level with mild associated spondylosis. (R. at 320.) He was diagnosed with degenerative joint disease at the L5-S1 level and spondylosis. (R. at 322.) On November 15, 2002, Bolling presented to the emergency room at Lonesome Pine for complaints of back and left leg pain. (R. at 308-14.) An MRI of Bolling's lumbosacral spine showed severe degenerative disc disease at the L5-S1 level and a large herniation of the disc nucleus on the left side at the L5-S1 level, extending from the midline, producing significant extrinsic pressure on the S1 nerve root and other nerve roots on the left side. (R. at 314.) Bolling was diagnosed with acute exacerbation of chronic back pain. (R. at 310.)

On January 13, 2012, Bolling saw Dr. Michael Wheatley, M.D., to establish care. (R. at 332-33.) Bolling complained of shoulder pain and back pain resulting from osteoarthritis and disc herniation. (R. at 332.) Dr. Wheatley diagnosed disc herniation. (R. at 333.) On April 23, 2013, Bolling reported that low back pain prevented him from stooping and standing for more than 30 to 60 minutes, but he could occasionally lift items weighing more than 50 pounds, continuously walk,

and he had no problems with sitting. (R. at 356-57.) He stated that he was laid off from work and had been unable to find work. (R. at 356.) Bolling denied shoulder weakness. (R. at 356.) He had full range of motion of his neck and head, and his cervical pain was described as mild. (R. at 357.) On April 26, 2013, an x-ray of Bolling's cervical spine showed disc space narrowing of the C5-C6 and C6-C7 disc space with anterior and posterior spondylitic spurring. (R. at 326.) On May 24, 2013, Bolling reported low back pain and stiffness and shoulder pain with tingling and numbness in his arms and hands. (R. at 328.) Dr. Wheatley diagnosed disc herniation and shoulder pain. (R. at 329, 354-55.)

On October 27, 2013, Dr. D. Kevin Blackwell, D.O., examined Bolling at the request of Disability Determination Services. (R. at 342-45.) Bolling complained of back and neck pain with pain and numbness in his fingers and tingling in his arms. (R. at 343.) Examination showed tenderness to the cervical musculature; symmetrical and balanced gait; shoulder and iliac crest heights were good and equal bilaterally; upper and lower joints were without effusion or obvious deformities; upper and lower extremities were normal for size, shape, symmetry and strength; grip strength was full and equal bilaterally; fine motor movement and skill activities of the hands were normal; reflexes in the upper and lower extremities were good and equal bilaterally; Romberg sign was negative; and proprioception was intact. (R. at 344-45.) X-rays of Bolling's lumbar spine, dated October 15, 2013, showed disc space narrowing at the L4-L5 and L5-S1 level. (R. at 339.) Dr. Blackwell diagnosed cervical and lumbar pain. (R. at 345.) Dr. Blackwell opined that Bolling was at maximum medical improvement. (R. at 345.)

Dr. Blackwell opined that Bolling could sit up to eight hours in an eight-hour workday and stand for up to two hours in an eight-hour workday, assuming

normal positional changes. (R. at 345.) Dr. Blackwell opined that Bolling could occasionally lift items weighing up to 35 pounds and frequently lift items weighing up to 20 pounds; he could perform abovehead reaching activities with both arms up to one-third of the day; operate foot pedals with both feet up to one-third of the day; squat and kneel up to one-third of the day; and he could not crouch, crawl, work around unprotected heights or perform repetitive and continuous stair climbing. (R. at 345.) Dr. Blackwell noted that Bolling had no limitation of hand usage, including fine motor movement and skill activities. (R. at 345.) No visual, communicative, hearing or other environmental limitations were noted. (R. at 345.)

On November 7, 2013, Dr. Robert McGuffin, M.D., a state agency physician, found that Bolling had the residual functional capacity to perform light work. (R. at 61-62.) He found that Bolling could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl and never climb ladders, ropes or scaffolds. (R. at 61.) He found that Bolling was limited to occasional overhead reaching with his upper extremities. (R. at 62.) No visual, communicative or environmental limitations were noted. (R. at 62.)

On November 26, 2013, Bolling reported to Dr. Wheatley that he had left upper back and left shoulder pain. (R. at 351-53.) His pain was characterized as mild, rating it at a four on a scale of one to 10. (R. at 351-52.) Dr. Wheatley reported that Bolling had full range of motion of his head and neck. (R. at 352.)

On the same day, Dr. Wheatley completed a medical assessment, indicating that Bolling could occasionally lift and carry items weighing 10 pounds and frequently lift and carry items weighing five pounds; stand up to one hour in an eight-hour workday and could do so for up to 10 minutes without interruption; sit

for four to six hours in an eight-hour workday and could do so for up to one hour without interruption; occasionally climb and crouch; frequently balance; never stoop, kneel or crawl; and never work around vibration. (R. at 347-49.) He opined that Bolling's ability to reach, to handle, to feel and to push and pull was limited due to decreased sensation in his hands. (R. at 348.) Dr. Wheatley opined that Bolling would be absent from work more than two days a month. (R. at 349.)

Dr. Wheatley also completed a mental assessment, indicating that Bolling had an unlimited ability to follow work rules; to interact with supervisors; to deal with work stresses; to function independently; to understand, remember and carry out detailed and simple job instructions; to maintain personal appearance; to behave in an emotionally stable manner; and to demonstrate reliability. (R. at 410-12.) He opined that Bolling had a limited, but satisfactory, ability to relate to co-workers; to maintain attention and concentration; to understand, remember and carry out complex job instructions and to relate predictably in social situations. (R. at 410-11.) Dr. Wheatley found that Bolling had a seriously limited ability, which resulted in unsatisfactory work performance, to deal with the public and to use judgment. (R. at 410.) He opined that Bolling would be absent from work about one day a month due to his impairments. (R. at 412.)

On May 15, 2014, Dr. Carolina Bacani-Longa, M.D., a state agency physician, found that Bolling had the residual functional capacity to perform medium[3] work. (R. at 86-87.) She found that Bolling could occasionally climb ladders, ropes and scaffolds and frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl. (R. at 86-87.) No manipulative, visual, communicative or

---

[3] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2017).

-8-

environmental limitations were noted. (R. at 87.)

On May 27, 2014, Bolling complained of lumbar back pain and nicotine dependence. (R. at 364-66.) Dr. Wheatley reported that Bolling had normal neck and musculoskeletal range of motion, strength and reflexes; and his mood, affect and behavior were normal. (R. at 366.)

On June 27, 2014, Bolling was seen at UVA for MRIs of his cervical and lumbar spines. (R. at 382-86.) Bolling's cervical spine MRI showed multilevel cervical degenerative disease, most prominent at the C5-C6 and C6-C7 disc spaces. (R. at 385.) It was noted that there was a severe bilateral foraminal stenosis and mild to moderate central canal stenosis at disc space C5-C6. (R. at 385.) Bolling's lumbar spine MRI showed lower lumbar degenerative disease, most prominent at the L5-S1 level where a disc bulge existed with superimposed left lateral recess/foraminal disc osteophyte complex severely stenosing the left lateral recess and with mild to moderate bilateral foraminal stenosis. (R. at 385-86.)

On July 30, 2014, Dr. Wheatley completed a medical assessment, indicating that Bolling could occasionally lift and carry items weighing 10 pounds and frequently lift and carry items weighing five pounds; stand and/or walk less than one hour in an eight-hour workday and could do so for less than 10 minutes without interruption; sit for up to four hours in an eight-hour workday and could do so for up to five minutes without interruption; occasionally balance; never climb, stoop, kneel, crouch or crawl; and never work around humidity and vibration due to severe cervical and lumbar degenerative disc disease. (R. at 388-90.) He opined that Bolling's ability to reach, to handle, to feel and to push and pull was limited due to decreased sensation in his hands. (R. at 389.) Dr. Wheatley opined that

Bolling would be absent from work more than two days a month. (R. at 390.)

On September 9, 2014, Bolling complained of back and neck pain with arm weakness and numbness. (R. at 397-400.) Dr. Wheatley reported that Bolling had normal neck and musculoskeletal range of motion, strength and reflexes; he had numbness of the ulnar nerve; and his mood, affect and behavior were normal. (R. at 399.) Bolling rated his neck pain at a three on a scale of one to 10 and his back pain at a six on a scale of one to 10. (R. at 397.) Dr. Wheatley recommended that Bolling see a surgeon for his neck pain once he obtained health insurance. (R. at 399.)

On March 2, 2015, Dr. Wheatley completed a statement, indicating that he was treating Bolling for cervical disc disease. (R. at 391-92.) He opined that Bolling was "unable to work permanently." (R. at 392.) Also on March 2, 2015, Bolling complained of neck pain. (R. at 400-03.) He described his pain as mild, rating it a four on a scale of one to 10. (R. at 400.) Dr. Wheatley reported that Bolling had normal neck and musculoskeletal range of motion, strength and reflexes; and his mood, affect and behavior were normal. (R. at 402.) On September 2, 2015, Bolling complained of numbness and back and neck pain. (R. at 414-17.) Dr. Wheatley reported that Bolling had normal neck and musculoskeletal range of motion, strength and reflexes; and his mood, affect and behavior were normal. (R. at 415-16.) Dr. Wheatley diagnosed displacement of intervertebral disc, hypertension and ulnar nerve compression. (R. at 416.)

On September 30, 2015, Paige Cordial, Psy.D., a licensed clinical psychologist, evaluated Bolling at the request of Bolling's attorney. (R. at 421-25.) Cordial reported that Bolling was casually dressed and adequately groomed; he

was cooperative; he made good eye contact; his mood was euthymic, and his affect was congruent with euthymic mood; he did not show any signs of anxiety or depression; and his memory was within normal limits. (R. at 421.) Bolling reported some depression depending on his pain level and anxiety related to social situations and groups. (R. at 422.) Bolling denied problems with attention and concentration. (R. at 423.) The Mini Mental State Exam – Second Edition, ("MMSE-2"), indicated that Bolling's cognitive functioning was within normal limits. (R. at 423.) The Kaufman Brief Intelligence Test, Second Edition, ("K-BIT II), was administered, and Bolling obtained a verbal IQ score of 110, a nonverbal IQ score of 109 and an overall IQ score of 110. (R. at 423.) The Beck Depression Inventory, Second Edition, ("BDI-II"), was indicative of a moderate level of depression. (R. at 423.) The Beck Anxiety Inventory, Second Edition, ("BAI-II"), was indicative of a low level of anxiety. (R. at 423.) Cordial diagnosed an adjustment disorder with mixed anxiety and depressed mood. (R. at 425.)

## III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2017). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2017).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Bolling argues that the ALJ improperly determined his residual functional capacity. (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-7.) In particular, Bolling argues that the ALJ erred by rejecting the opinions of Dr. Wheatley and Cordial. (Plaintiff's Brief at 5-7.) Bolling also argues that the ALJ erred by failing to find that his impairment(s) met or equaled the listing for disorders of the spine, found at 20 C.F.R. Part 404, Subpart P, § 1.04. (Plaintiff's Brief at 8-9.) Bolling further argues that the ALJ erred by failing to give appropriate credence to his testimony and to properly assess the effect of pain on his ability to perform substantial gainful activity. (Plaintiff's Brief at 9-10.)

Bolling argues that the ALJ erred by failing to find that his impairment(s) met or equaled the listing for disorders of the spine, found at 20 C.F.R. Part 404, Subpart P, § 1.04. (Plaintiff's Brief at 8-9.) Section 1.04 requires that the disorder result in *compromise of the nerve root or the spinal cord* with either (A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss

and, if there is involvement of the lower back, positive straight leg raising test; or (B) spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours; or (C) lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in § 1.00(B)(2)(b). *See* 20 C.F.R. Pt. 404, Subpt. P, § 1.04 (2017).

For a claimant to demonstrate that his impairments meet or equal a listed impairment, he must prove that he "meet[s] *all* of the specified medical criteria. An impairment that manifests only some of [the] criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). Here, Bolling's impairments do not meet or equal § 1.04 because the record reveals no evidence of ongoing nerve root compression, limitation of movement or motor loss. On June 27, 2014, an MRI of Bolling's cervical spine showed a severe bilateral foraminal stenosis and mild to moderate central canal stenosis at disc space C5-C6, and an MRI of his lumbar spine MRI showed a disc bulge with superimposed left lateral recess/foraminal disc osteophyte complex severely stenosing the left lateral recess and mild to moderate bilateral foraminal stenosis, all at the L5-S1 level. (R. at 385-86.) Nevertheless, Dr. Wheatley's examinations routinely showed that Bolling had full range of motion of his neck and head and normal strength and reflexes. (R. at 352, 366, 399, 402.)

Also, there is no objective medical evidence of record showing that Bolling suffers nerve root or spinal cord compromise in his lumbar spine. Bolling's

impairment also is not equivalent to the impairment listed at § 1.04 because he has not presented medical findings equal in severity to all criteria listed. *See Sullivan*, 493 U.S. at 530; 20 C.F.R. §§ 404.1526(c), 416.926(c) (2017). While the evidence shows that Bolling suffers from cervical and lumbar spine problems, the evidence shows that he consistently has exhibited no sensory, strength or reflex loss. (R. at 366, 399, 402.) Based on the above, I find that substantial evidence supports the ALJ's failure to find that Bolling's impairments met or equaled § 1.04.

Bolling argues that the ALJ erred by failing to properly weigh the medical evidence. (Plaintiff's Brief at 5-7.) In particular, Bolling argues that the ALJ erred by failing to give full consideration to Dr. Wheatley's and Cordial's assessments. (Plaintiff's Brief at 5-7.) It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(c), 416.927(c), if she sufficiently explains her rationale and if the record supports her findings.

It is well-settled that, in determining whether substantial evidence supports the ALJ's decision, the court must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co.*, 131 F.3d at 439-40. "[T]he [Commissioner] must indicate explicitly that all relevant evidence has been weighed and its weight." *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir.

1979). "The courts … face a difficult task in applying the substantial evidence test when the [Commissioner] has not considered all relevant evidence. Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight [she] has given to obviously probative exhibits, to say that [her] decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977) (quoting *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974)).

The ALJ found that Bolling had the residual functional capacity to perform simple, routine, light work, except that he would be limited to never climbing ladders, ropes or scaffolds; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, crawling and bilateral overhead reaching; and frequent bilateral reaching in other directions, handling and fingering. (R. at 23.) In making this residual functional capacity finding, the ALJ stated that he was giving Dr. Wheatley's opinion "little weight" because it was not supported by the objective evidence of record. (R. at 25.) Dr. Wheatley noted that he based his opinions on Bolling's own statements rather than the medical evidence. (R. at 348.) A physician's opinion based upon a claimant's subjective complaints is not entitled to deference and should be rejected. *See Johnson v. Barnhart*, 434 F.3d 650, 657 (4th Cir. 2005). In addition, Dr. Wheatley's treatment notes contradict his check-mark assessments. Dr. Wheatley consistently reported that Bolling presented in no acute distress, and examinations indicated no functional abnormalities of the upper or lower extremities. (R. at 331, 352, 357, 359, 366, 373, 379, 396, 402, 415.) In April 2013, less than two weeks before Bolling filed for disability benefits, he reported that he could lift up to 50 pounds, "sitting causes no problem," and he "can walk continuously." (R. at 330.) Furthermore, Dr. Blackwell noted that

Bolling had a symmetrical and balanced gait; his upper and lower extremities were normal for size, shape, symmetry and strength; grip strength was full and equal bilaterally; fine motor movement and skill activities of the hands were normal; reflexes in the upper and lower extremities were good and equal bilaterally; and proprioception was intact. (R. at 344-45.) Cordial diagnosed an adjustment disorder with mixed anxiety and depressed mood; however, she placed no limitations on Bolling's work-related mental abilities. (R. at 425.) The record shows that Bolling repeatedly denied anxiety and depression. (R. at 332, 344, 351, 354, 356, 358, 365, 372, 376, 378, 395, 398, 402.)

The ALJ noted that he was giving great weight to the opinion of Dr. McGuffin. (R. at 25.) An ALJ may rely upon the opinion of a state agency physician. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) ("State agency medical and psychological consultants ... are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants ... as opinion evidence, except for the ultimate determination about whether you are disabled."); *Campbell v. Bowen*, 800 F.2d 1247, 1250 (4th Cir. 1986) (Fourth Circuit cases "clearly contemplate the possibility that [treating physician] opinions may be rejected in particular cases in deference to conflicting opinions of non-treating physicians"); Social Security Ruling (SSR) S.S.R. 96–6p, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings (West 2013 Supp.). ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."). Based on this, I find that

substantial evidence exists to support the ALJ's weighing of the evidence with regard to Bolling's residual functional capacity.

Bolling also argues that the ALJ erred by failing to give appropriate weight to his testimony and to properly assess the effect of pain on his ability to perform substantial gainful activity. (Plaintiff's Brief at 9-10.) Based on my review of the record, I find that the ALJ considered Bolling's allegations of pain in accordance with the regulations. The Fourth Circuit has adopted a two-step process for determining whether a claimant is disabled by pain. First, there must be objective medical evidence of the existence of a medical impairment which could reasonably be expected to produce the actual amount and degree of pain alleged by the claimant. *See Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, the intensity and persistence of the claimant's pain must be evaluated, as well as the extent to which the pain affects the claimant's ability to work. *See Craig*, 76 F.3d at 595. Once the first step is met, the ALJ cannot dismiss the claimant's subjective complaints simply because objective evidence of the pain itself is lacking. *See Craig*, 76 F.3d at 595. This does not mean, however, that the ALJ may not use objective medical evidence in evaluating the intensity and persistence of pain. In *Craig*, the court stated:

> Although a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers....

76 F.3d at 595.

I find that the ALJ reasonably found that Bolling's subjective complaints of disabling functional limitations were not fully credible. (R. at 24.) The ALJ found Bolling's statements concerning the intensity, persistence and limiting effects of his symptoms "not entirely credible." (R. at 24.) The ALJ noted that Bolling had received various forms of routine treatment, which generally were successful in controlling his symptoms. (R. at 24.) The ALJ also noted that Bolling had degenerative disc disease and an adjustment disorder in relation to ongoing pain; however, she noted that Bolling received only conservative treatment, and the evidence did not suggest a complete inability to function. (R. at 24.)

Based on the above, I find that substantial evidence exists in the record to support the ALJ's finding that Bolling was not disabled. An appropriate Order and Judgment will be entered.

DATED: August 8, 2018.

s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE